UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | |
| ANDRE JAMAL BENNETT, | * | MBD No. 26-mc-91414-ADB |
| | * | and 26-mj-06668-MPK |
| Defendant. | * | 1:26-cr-10268-FDS-1 |

# MEMORANDUM AND ORDER

BURROUGHS, D.J.

Upon the motion of the United States of America for review of the August 11, 2026, order releasing Defendant Andre Jamal Bennett ("Bennett") from custody (the "Release Order"), the Court has conducted an independent, de novo review of the record and counsel's arguments. See United States v. Pierce, 107 F. Supp. 2d 126, 128 (D. Mass. 2000); United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990). For the reasons set forth below, the government's motion for pretrial detention, United States v. Bennett, No. 26-mj-06668 (D. Mass. Sep. 4, 2026), Dkt. No. 14 (hereinafter "Mot. for Det."), is **GRANTED** and Bennett shall be detained pending trial.

## I. BACKGROUND

### A. Factual Allegations Leading to the Present Charge

Bennett has been charged with traveling with the intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b), and the government anticipates bringing additional

charges of sexual exploitation of children in violation of 18 U.S.C. § 2251(a) and (e). Mot. for Det. at 5. On August 10, 2026, the Federal Bureau of Investigation ("FBI") reviewed two National Center for Missing & Exploited Children CyberTipline reports from the social media company Instagram. Id. at 2. The reports concerned the online enticement and solicitation of a minor by an adult suspect operating two Instagram handles linked to the same user account. Id. On June 11, 2026, the FBI conducted a forensic interview with the minor ("Minor 1"), during which Minor 1 reported that she was contacted, via Snapchat, by an individual purporting to be a 16-year-old boy named "Chris." Id. Minor 1 reported that she told the individual that she was 13 years old, and that he requested nude pictures and videos of her but that she refused to provide any to him. Id.

Text records on Minor 1's cell phone show that Bennett ordered an Uber to pick her up near her home on November 12, 2025, at 6:46 AM. Mot. for Det. at 3. Minor 1 reported that after picking her up, the Uber drove to Logan Airport to pick up "Chris," and that "Chris" was wearing all black and had a sweatshirt hood over his head. Id. at 2. Minor 1 reported that she then rode with "Chris" in the Uber to a hotel where "Chris" raped her and videotaped the sexual encounter with his cell phone. Id. at 2–3.

Delta Air Lines, Inc. ("Delta") corporate security confirmed that Bennett was an active Delta employee assigned to John F. Kennedy ("JFK") airport in New York.[1] Mot. for Det. at 3–4. A grand jury subpoena issued to Delta produced evidence that Bennett departed JFK airport

---

[1] Bennett claims that he was most recently working as a "customer service agent" for Delta, but that as of approximately August 14, 2026, he has been placed on unpaid suspension and will face termination if he does not obtain updated security credentials. Defendant's Opposition to the Government's Motion for Pretrial Detention at 8, Bennett, No. 26-mj-06668 (D. Mass. Sep. 21, 2026), Dkt. No. 22 (hereinafter "Opp.").

on November 12, 2025, at 6:10 AM and arrived in Boston at 7:37 AM. Id. at 4. Bennett departed Boston that same day at 12:00 PM and arrived at LaGuardia Airport in New York at 1:28 PM. Id.

On December 5, 2025, during a missing juvenile investigation of Minor 1, a Stoughton police officer recovered a Capital One credit card issued under the name "Andre J Bennett" from Minor 1. Mot. for Det. At 3. On June 24, 2026, Minor 1 participated in an audio recorded witness identification and identified Bennett as the individual who had sex with her. Id. at 4. Investigators also reviewed text messages sent between March 28, 2026 and June 20, 2026, between Minor 1 and a phone number that T-Mobile had identified as associated with Bennett. Id. at 3–4. The messages show that Bennett identified himself to Minor 1 as "Chris" and repeatedly asked for sexual acts and explicit photographs. Id. at 4. Minor 1 refused, blocked him, told him she was reporting him to the police, and called him a "pedo." Id. Bennett responded to Minor 1 with insults and slurs and offered her money. Id.

On July 20, 2026, investigators interviewed Bennett after advising him of his Miranda rights and obtaining a Miranda waiver. Mot. for Det. at 4. Bennett admitted to having sex with Minor 1 and filming the encounter, and he showed investigators the video on his iPhone with a timestamp of November 12, 2025. Id. at 4–5. Bennett told investigators that Minor 1 had informed him that she was 13 years old, and that he had provided her with his credit card. Id. at 5. Bennett also acknowledged that the two Instagram handles referenced above were his and that he sent messages to Minor 1. Id.

**B. Procedural History**

After a detention hearing held on August 11, 2026 in the Eastern District of New York, the Court ordered that Bennett be released pending trial with a $100,000 bond. See Transcript of

Bond and Detention Hearing, United States v. Bennett, No. 26-mj-00161 (E.D.N.Y. Aug. 11, 2026), Dkt. No. 9. During the detention hearing, the Government requested a temporary stay of Bennett's release to permit an appeal in the District of Massachusetts. Id. at 12. The Government then filed an emergency motion for a stay and revocation of the release order in the instant action. [ECF No. 2]. On August 11, 2026, this Court granted the Government's motion for a stay and ordered that Bennett remain in custody pending a hearing before this Court. [ECF No. 5].

After briefing by both sides, see Mot. for Det.; Opp., a review of the transcripts and exhibits filed in connection with the detention hearing in the Eastern District of New York, and oral argument from counsel, Bennett, No. 26-mj-06668 (D. Mass. Sep. 22, 2026), Dkt. No. 23, the Court took the matter under advisement.

## II. LEGAL STANDARD

The Court reviews the Magistrate Judge's pretrial detention order de novo. United States v. Marquez, 113 F. Supp. 2d 125, 127 (D. Mass. 2000) (citing Tortora, 922 F.2d at 882 n.4). To support pretrial detention, the government must demonstrate (1) by a preponderance of the evidence that the defendant poses a flight risk, or (2) by clear and convincing evidence that the defendant is a danger to the community. See United States v. Patriarca, 948 F.2d 789, 792–93 (1st Cir. 1991). As a general rule, the Court must determine whether any condition or combination of conditions will assure the defendant's appearance and the safety of people in the community. 18 U.S.C. § 3142(e).

If the Court finds that there is probable cause to believe that the defendant committed an offense involving a minor victim in violation of § 2423, 18 U.S.C. § 3142(e)(3)(E), "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance

of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(1). In that case, the defendant has a burden to produce some evidence rebutting the presumption, United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991), such as "lack of criminal history, community ties, steady employment, family support and Probation's supportive recommendation," United States v. Cross, 389 F. Supp. 3d 140, 142 (D. Mass. 2019). "When a defendant produces such evidence, however, the presumption does not disappear," instead, "[t]he burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight." Dillon, 938 F.2d at 1416. The Court also considers the factors set forth in § 3142(g), including "the nature and circumstances of the offense charged," "the weight of the evidence against the [defendant]," "the history and characteristics of the [defendant]," and "the nature and seriousness of the danger to any person or the community . . . posed by the [defendant's] release." 18 U.S.C. § 3142(g).

## III. DISCUSSION

Bennett argues that he does not pose a risk of flight and that the Court could ensure the safety of the community through a combination of release conditions, including house arrest at his mother's house in Queens, New York, Opp. at 6, 8, GPS monitoring, restrictions on his use of internet devices, and a bond secured by his parents and brother. Opp. at 7–8. He also contends that his minimal criminal history, proactive engagement in therapy, lack of substance abuse, and close family ties, including to his mother, with whom he plans to reside, weigh strongly enough in his favor that he should be released. Id. at 5–8. The Court finds that while the government has not shown by a preponderance of the evidence that Bennett is a flight risk, it has shown that detention is necessary to reasonably assure the safety of the community.

With respect to Bennett's risk of flight, the Court acknowledges the government's arguments that Bennett's lack of any substantial ties to Massachusetts poses a serious risk of flight warranting detention, see Pierce, 107 F. Supp. 2d at 129 (finding that defendant posed a flight risk because he "maintain[ed] significant ties outside of [this district]"), and that he has a strong incentive to flee based on the mandatory minimum sentence of fifteen years of imprisonment that he potentially faces for charges of 18 U.S.C. § 2251(a) and (e), which the government intends to bring against him. Mot. for Det. at 13. Despite these concerns, Bennett appeared at his initial hearing in the Eastern District of New York without issue, Opp. at 7, and his family members have agreed to drive him to Massachusetts for any required court appearances and to act as sureties for a $100,000 bond, id. at 8. Bennett's employment with Delta has effectively ended and he therefore will no longer receive the travel benefits to which it appears he was previously entitled, id., and which would have facilitated his flight. Further, his risk of flight can be mitigated by electronic monitoring and requiring him to surrender his passport. Accordingly, the Court finds that the government has not shown by a preponderance of the evidence that Bennett is a flight risk.

With respect to dangerousness, however, the Court finds that pretrial detention is warranted. First, the Court finds that based on the evidence presented, including text and social media messages, Bennett's flight history, Minor 1's identification of Bennett, and Bennett's own admissions, there is probable cause to believe that Bennett committed an offense involving a minor victim in violation of 18 U.S.C. § 2423. Because Bennett has set forth some evidence rebutting the presumption of detention, including that he has only minimal criminal record and that he has the strong support of several close family members, Opp. at 5–7, the Court will consider the presumption alongside the other § 3142(g) factors.

First, the nature of the offense and the weight of the evidence against Bennett strongly support pretrial detention. Bennett has admitted to engaging in illicit sexual conduct with Minor 1 after Minor 1 explicitly told him that she was thirteen years old and admitted to filming their encounter. Mot. for Det. at 5. When questioned by investigators, Bennett initially denied engaging in sexual activity with Minor 1, suggesting that he was aware of the illegality of his conduct. Id. at 4. Investigators have obtained the video of the incident from Bennett's phone as well as multiple text messages and social media messages between Bennett and Minor 1 on accounts that Bennett admits are his own. Id. at 5. Additionally, Minor 1 was in possession of Bennett's credit card, and she identified Bennett in a lineup. Id. at 3–4. The strength of the evidence and the nature of the charged offenses are sufficient to establish by clear and convincing evidence that Bennett poses a danger to the community.

While the Court acknowledges Bennett's lack of criminal history and appreciates the burden Bennett's family is willing to take on to facilitate his release and supervision, the crimes Bennett is alleged to have committed involved the use of the internet, which in today's age is extremely difficult to limit, and Bennett could easily obtain new devices notwithstanding his family's cooperation and other pre-trial supervision conditions. The government also noted during the September 22, 2026, hearing before this Court that Bennett has attempted to contact at least one other minor since the incident with Minor 1. See Bennett, No. 26-mj-06668, (D. Mass. Sep. 22, 2026), Dkt. No. 23. Considering this fact, along with his strategic use of deceit during his interactions with Minor 1, the Court does not believe that any conditions could sufficiently mitigate the danger he potentially poses to other children.

Additionally, Bennett argues that the Court should order his conditional release as a remedy for its failure to afford him a prompt determination on the government's motion for

revocation of the magistrate judge's release order. See Opp. at 10. 18 U.S.C. § 3145(a) provides that if a magistrate judge orders a defendant's release, the government may move the district court for revocation of the release order and the motion "shall be determined promptly." Id. § 3145(a). Here, the delay in determination was caused in large part by the delay in securing counsel for Bennett, Opp. at 11, which the Court acknowledges should have happened more quickly. That said, "the involvement of more than one district," as is the case here, "may contribute to [a delay] for which no real blame can be fixed," United States v. Montalvo-Murillo, 495 U.S. 711, 720 (1990), and Bennett is not entitled to automatic release simply because of the delay at issue here, id.

## IV. CONCLUSION

In sum, the government has demonstrated by clear and convincing evidence that Bennett is a danger to the community. Accordingly, the government's motion for pretrial detention is **GRANTED**.

**SO ORDERED.**

October 14, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE